### E. L. C. Branford v. The State.

No. 16156.   Delivered December 13, 1933.
Reported in 66 S. W. (2d) 330.

The opinion states the case.

*Wm. A. Shofner,* of Temple, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft by bailee; punishment, a fine of $50.00.

We think there is not sufficient evidence in this case to show appellant guilty of theft by bailee. In some cases the offenses of embezzlement and of theft by bailee have become confused. Article 1534, P. C., defines embezzlement, and article 1429, P. C., defines theft by bailee. It will be noted that embezzlement has been a defined offense in this state since 1858, and the statute makes penal any person acting as agent, employee, clerk, etc., for another who has employed him, or put him in charge of property or money of such employer or principal, which money, property, etc., is held or used by such agent or employee for the benefit of his employer or principal. Examination of article 1429, supra, which was enacted in 1887, as well as the cases under same, makes evident the fact that this statute in-

tends to penalize him who hires, for his own use, or borrows, for his own benefit, or obtains from another under some agreement which amounts to a bailment,—money or property so gotten for the use or enjoyment of the BORROWER or HIRER, and not for the use and benefit of the person from whom he got it or to whom it belongs.

Conceding that clothes, jewelry, etc., upon a dead wife are the property of the husband, in so far as the law of theft or embezzlement is concerned,—we are constrained to hold that the embalmer or undertaker who has possession of such body for the purpose of embalming or preparing it for burial, holds it not for his own use but as the property of the husband, and for the purpose of executing the wishes and directions of the husband, whose employee or agent such undertaker is. In short, we think if any offense was committed by the taking of the ring in question by appellant or his mother, if it was so taken, it could only be embezzlement and not theft by bailee. Certainly the undertaker does not borrow or hire the body for his own use, or enjoyment.

We deem it not improper to further add that in any event the reversal of this case would be necessary because of the erroneous admission, over objection, of the testimony of Mr. Evetts that appellant's mother, when asked about the ring in question, after its loss had been discovered, said "Eulie had it," Eulie being appellant, who was not present when this statement was made. Same was not admissible under any rule known to us. Aside from this bit of improper testimony, the record before us contains nothing which would lead to a satisfactory conclusion that this appellant got the ring and not some other person. He is not shown to be or to have been in possession of same at any time, nor is there in evidence any admission or statement that he got it. Admitting that the conflicting evidence as to whether Russell's wife had on a ring when she died, makes of this a jury question,—the State's own testimony shows that three other people than appellant handled the body and removed it from Belton where the woman died to the undertaker's at Temple, before appellant ever saw it. He testified in his own behalf that there was no ring on the body when he embalmed it. Manifestly the three persons who carried the body from Belton to Temple were the first custodians after her death. Belton is eight miles from Temple. Ample opportunity would seem afforded to these three people to get the ring if they wanted to. Another thing,—Russell did not testify to any contract made by him with this appellant in person, but said he called "The Branford Undertaking Company," of which he said appellant was

the funeral director, to come get the body of his wife. If he talked with appellant, this record does not disclose such fact. That any contract for embalming was made, if any, is undisclosed. The fact that appellant might be the funeral director of the Branford Undertaking Company would not establish that he was the company, or that he was a partner in it, or that he was responsible for its contracts in any way. After testifying that he called said undertaking company to come and get his wife's body, Russell further testified that Mrs. Branford and two boys came from the undertaking parlors and that appellant was not with them; that they took his wife's body away, and that she had on a diamond ring of the value of five dollars. He further testified that he had not seen the ring since his wife died, but that it was not on her finger when the body was returned from the undertaking establishment. He further testified that the body was returned to him by Mrs. Branford, and that appellant was not there at that time. Mr. Evetts, the prosecuting attorney, testified for the State, that Russell came to see him about some trouble he was having over an embalming fee, and witness and the sheriff went with Russell to Temple and to said undertaking parlors. Appellant was not there. They saw appellant's mother and talked to her. Russell asked her where his wife's diamond ring was, and she said "Eulie had it." The defense put on Mary Butler who swore that she knew Russell's wife, and was with her just before her death and observed that she had on a diamond ring, and told her that she ought to take it off because her hands and fingers were swelling. She said she was present at Russell's house when they came after the body to take it to the undertaker's, and that she assisted in putting the body in a sheet, and particularly noticed the hands and fingers of the dead woman which were much swollen, and saw no ring on the fingers. She was sure she would have noticed the ring had it been there. After testifying in his own behalf that he embalmed the body and that there was no ring on it, appellant said he saw Russell in a day or two and Russell said nothing about there having been any ring on the body.

Clearly the statement made in appellant's absence to the effect that he had the ring, was inadmissible. As above said, without that statement the record is absolutely devoid of anything upon which appellant's guilt of any offense could be predicated.

Believing that the facts fail to make out the offense for which appellant was convicted, and that this necessitates a re-

versal, it is ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*